FABRAL, INC.,      )
           )  Civil Action
     Plaintiff  )  No. 09-cv-00279
           )
   vs.      )
           )
B&B ROOFING COMPANY, INC.,  )
 doing business as B&B Roofing )
 & Metals, Inc.;    )
B&B METALS OF MIDDLEBORO, INC., )
 doing business as B&B Roofing )
 & Metals, Inc.;    )
B&B METALS, LLC,     )
 doing business as B&B Roofing )
 & Metals, Inc.; and   )
GARY M. BREWSTER,     )
           )
     Defendants  )


       *  *  *


APPEARANCES:

    CHRISTOPHER H. CASEY, ESQUIRE
     On behalf of Plaintiff

    C. PATRICK SEXTON, ESQUIRE
     On behalf of Defendants


       *  *  *


O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

   This matter is before the court on Plaintiff's Motion

for Summary Judgment filed November 15, 2010.  Defendants'

Response to Motion for Summary Judgment Filed by Fabral, Inc. was

filed December 9, 2010. Plaintiff's Reply Brief in Support of Motion for Summary Judgment was filed January 4, 2011.

<u>SUMMARY OF DECISION</u>

For the following reasons, I grant the motion in part, deny it in part, and dismiss it in part as moot. On Count I, I enter judgment in favor of plaintiff Fabral, Inc. and against defendant B&B Metals, LLC on liability and compensatory damages only in the amount of $1,039,822.37; and I enter judgment in favor of plaintiff Fabral, Inc. and against defendant B&B Metals of Middlesboro, Inc. on liability and compensatory damages only in the amount of $498,136.98.

I deny the motion to the extent it seeks summary judgment on Count I in favor of plaintiff and against defendant B&B Roofing Company, Inc.

On Count II, I grant summary judgment in favor of plaintiff and enter judgment in favor of plaintiff Fabral, Inc. and against defendant Gary M. Brewster, in the amount of $1,537,959.35 plus interest at the rate of twelve percent per annum or the maximum rate permitted by law, whichever is less, from January 12, 2009 (the date of demand) until paid in full.

I dismiss Count III as moot.

Finally, I dismiss the motion as moot to the extent it seeks summary judgment in favor of plaintiff on defendants' entire counterclaim.

Jurisdiction in this case is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in Lancaster, Pennsylvania, which is within this judicial district. Moreover, by contract, the parties agreed to venue in this district.[1]

## PROCEDURAL HISTORY

Plaintiff Fabral, Inc., a supplier of construction materials, initiated this action on January 21, 2009 by filing a three-count civil Complaint in this court. Count I alleges breach of contract against defendants B&B Roofing Company, Inc. ("B&B Roofing"), B&B Metals of Middlesboro, Inc. ("B&B Metals of Middlesboro"), and B&B Metals, LLC ("B&B Metals") (all three collectively, "B&B defendants"). Count II alleges breach of contract against defendant Gary M. Brewster. Count III alleges a claim for unjust enrichment against all defendants.

Plaintiff's claims arise from a business relationship whereby plaintiff supplied construction materials to the B&B defendants. The Complaint alleges that the B&B defendants by a credit agreement, and defendant Brewster by a personal guaranty,

---

[1]    Complaint, paragraph 9; Complaint, Exhibit A (Credit Application and Agreement dated November 4, 2003).

are obligated to pay for such materials supplied to the B&B defendants, but are in default.

On January 30, 2009, each defendant was served with the Complaint and Summons by personal service. On February 20, 2009, the Clerk of Court entered default against all defendants for failure to appear, plead or otherwise defend. That same day, plaintiff moved for default judgment against all defendants.

On March 4, 2009, defendants moved to set aside the default. By Order dated November 3, 2009, I granted defendants' motion, vacated the February 20, 2009 default, and denied plaintiff's motion for default judgment. The Answer, Affirmative Defenses and Counterclaims of Defendants ("Answer") was filed November 30, 2009.

In the Answer, defendants' counterclaims are set forth under the title "Counterclaims Pursuant to Fed.R.Civ.P. 13(a) and (b)". This section includes factual allegations regarding the parties' business and payment history.[2] The Answer then sets forth two specific counterclaims.[3]

Counterclaim Count I alleges breach of contract against plaintiff, and avers that plaintiff improperly applied defendants' payments to earlier invoices in violation of an oral agreement referred to as the "Mountain Metals Balance Agreement"

---

[2]     Answer, paragraphs 10-21.

[3]     Answer, paragraphs 22-28.

and the parties' written credit agreement.  Counterclaim Count II is titled "Injunctive Relief" and seeks an order enjoining plaintiff from taking any action or asserting any claim or defense which is inconsistent with the terms of the Mountain Metals Balance Agreement.

On December 21, 2009, plaintiff filed its Answer with Affirmative Defenses to Counterclaims.  Defendants filed an Amended Answer, alleging the same counterclaims, on May 17, 2010.  Plaintiff answered the Amended Answer on June 7, 2010.

Plaintiff filed the within motion for summary judgment on November 15, 2010, with accompanying brief and concise statement of undisputed material facts.  Defendant responded on December 9, 2010 by filing a brief in opposition and its Response in Opposition to Plaintiff, Fabral, Inc.'s, Undisputed Material Facts in Support of Motion for Summary Judgment.  As discussed more fully below in footnote 2, that document, while titled a "response in opposition" to plaintiff's statement of facts, does not admit or deny any of plaintiff's proffered facts, and is more accurately characterized as a counter-statement of facts.  Plaintiff filed its reply brief on January 4, 2011.

On February 23, 2011, defendants withdrew their entire counterclaim.  Accordingly, as discussed below, I dismiss plaintiff's motion as moot to the extent it seeks summary judgment on those claims.

Hence this Opinion.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); <u>Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company</u>, 316 F.3d 431, 443 (3d Cir. 2003). Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. <u>See</u> <u>Watson v. Eastman Kodak Company</u>, 235 F.3d 851, 857-858 (3d Cir. 2000). Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor. <u>Ridgewood Board of Education v. N.E. for M.E.</u>,

172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v. Bentsen</u>,

889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, exhibits, and the parties' respective concise statements of undisputed material facts,[4] the pertinent undisputed facts for purposes of the motion

---

[4] My April 9, 2010 Rule 16 Status Conference Order required that "any party filing a motion for summary judgment...shall file and serve, in addition to a brief, a separate short concise statement, in numbered paragraphs, of the material facts about which the moving party contends there is no genuine dispute. The moving party shall support each material fact with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record."

Plaintiff's motion for summary judgment complies with that provision of my Order, and includes a separate statement which consists of 96 numbered facts with corresponding citations to the record. However, although defendants' response includes a separate statement of facts, it does not comport with my Order, which further required that "any party opposing a motion for summary judgment...shall file and serve, in addition to a brief, a separate short concise statement, responding in numbered paragraphs to the moving party's statement of the material facts about which the opposing party contends there is a genuine dispute, with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record. All factual assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth in this paragraph."

Defendants' document titled "Response in Opposition to Plaintiff Fabral, Inc.'s Undisputed Material Facts in Support of Motion for Summary Judgment" consists of 18 numbered facts which do not appear to respond to plaintiff's proffered facts. Rather, defendants' statement is more accurately characterized as a counter-statement of facts with citations to the record. Defendants' filings do not include a document which responds directly to each of plaintiff's 96 allegedly undisputed material facts. Thus, defendants have not specifically denied any of the facts set forth in plaintiff's concise statement as required by my Rule 16 Status Conference Order.

The requirement for a concise statement and a responsive concise statement is consistent with the requirement of Rule 56 of the Federal Rules of Civil Procedure that the moving party provide proof that there are no genuine issues of material fact which would prevent him from being entitled to judgment as a matter of law. Moreover, in response, the non-moving party (in this case defendants) may not rest on its pleadings, but must come forward with competent evidence that demonstrates a genuine issue of material fact. <u>Ridgewood</u>, <u>supra</u>.

(<u>Footnote 4 continued</u>):

-7-

for summary judgment are as follows.

Defendant Gary M. Brewster is the owner of defendants B&B Metals and B&B Roofing. His son, Logan Brewster, is the owner of defendant B&B Metals of Middlesboro. During the relevant period, B&B Metals of Middlesboro and B&B Metals sold metal roofing to retail customers. B&B Metals of Middlesboro operated a retail store in Middlesboro, Kentucky. B&B Metals had retail stores in Harriman, Tennessee; Knoxville, Tennessee; and Oneida, Tennessee. B&B Metals of Middlesboro and B&B Metals purchased roofing materials from plaintiff Fabral. Each of the three B&B defendants does business under the trade name "B&B Roofing and Metals, Inc."

---

(Continuation of footnote 4):

      In addition, Rule 83(b) of the Federal Rules of Civil Procedure provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

      Thus, even if my requirement for a separate concise statement were not consistent with Rule 56, my October 16, 2009 Rule 16 Status Conference Order gave plaintiff actual notice of my requirement, and plaintiff clearly failed to comply with it. See Kelvin Cryosystems, Inc. v. Lightnin, 2004 U.S.Dist.LEXIS 23298, at *4 (E.D.Pa. Nov. 15, 2004)(Gardner, J.).

      Accordingly, although I do not grant defendant's motion as unopposed, see E.D.Pa.R.Civ.P. 7.1(c), I deem admitted all facts contained in Plaintiff's Statement of Undisputed Material Facts filed November 15, 2010 for purposes of the within motion, to the extent they do not conflict with defendant's counter-statement of facts.

On November 4, 2003, defendant Brewster signed, on behalf of all three of the B&B defendants, a document titled "Credit Application and Agreement".[5]  Pursuant to the Credit Application and Agreement, the payment terms for the B&B defendants' purchases of roofing materials from plaintiff Fabral, Inc. are net 30 days from the date of invoice, unless otherwise specified.  If the B&B defendants fail to pay any invoice to Fabral in full when due, the B&B defendants are required to pay Fabral 1.5 percent of the unpaid amount each month or part of month that remains unpaid.  Additionally, the Credit Application and Agreement provides that if B&B fails to pay any invoice to Fabral in full when due, the B&B defendants are required to pay plaintiff's collection costs, including plaintiff's court costs and attorneys' fees in the event of a lawsuit between plaintiff and the B&B defendants.

On January 9, 2007, defendant Brewster signed a Personal Guaranty, whereby he unconditionally guaranteed the payment to plaintiff Fabral of all sums and amounts that defendants shall owe at any time to plaintiff for any materials furnished by plaintiff.[6]  The Personal Guaranty provides that defendant Brewster will pay all amounts guaranteed to Fabral upon

_____

[5]    The Credit Application and Agreement is attached to plaintiff's Complaint as Exhibit A.

[6]    The Personal Guarantee is attached to plaintiff's Complaint as Exhibit B.

written demand for payment sent to defendant Brewster, together with interest after such demand on any unpaid amounts at the rate of 12 percent per annum or the maximum rate permitted by law, whichever is less, from the date of demand until paid in full.

The Personal Guaranty is an open and continuing guaranty and applies to any and all amounts owed to Fabral by defendants, whether such amounts are secured or unsecured and evidenced by a note of any kind or are on an open account. It also provides that defendant Brewster will reimburse plaintiff for all legal costs incurred in the collection or enforcement of the Guaranty, to the extent permitted by law.

The Personal Guaranty applies to any amounts that defendants owe to Fabral, including any amounts that defendants previously owed to Mountain Metals Manufacturing Corporation ("Mountain Metals"). Through the Personal Guaranty, defendant Brewster is responsible for the payment of all Fabral invoices that Fabral sent to each of defendants' four retail locations.

<u>Mountain Metals</u>

In or around 2000, Mountain Metals began selling roofing materials to defendants. Mountain Metals' payment terms for defendants were net 60 days from the date of invoice. In 2006, defendants fell behind in their payment to Mountain Metals, and from 2001 to early 2006, defendants consistently failed to pay within Mountain Metals payment terms.

-10-

As of March 1, 2006, defendants owed Mountain Metals a total of $1,692,400 for roofing materials.  Of this amount, approximately $700,000 was 60 or more days past due.

On April 5, 2006, plaintiff Fabral and Mountain Metals, along with the principals of Mountain Metals, entered into an asset purchase agreement for the purchase by Fabral of all of the assets of Mountain Metals.  The closing of the acquisition took place on April 7, 2006.

At the time of the acquisition, defendants owed Mountain metals approximately $1.6 million to $1.7 million in unpaid invoices.  As of the end of April 6, 2006, the amount of outstanding Mountain Metals accounts receivable that were 61 or more days past due was $788,916.66.

The acquisition agreement between Fabral and Mountain Metals provided that the purchase price would be reduced by a "holdback amount" equal to the accounts receivable from defendants which were 61 or more days past due, as of the closing date.  Pursuant to the acquisition agreement, Fabral was required to remit to Mountain Metals all payments with respect to invoices constituting the holdback amount, within ten days of Fabral's receipt of those payments.

By mid-September 2006, defendants had paid the $788,916.66 in 61-plus days invoices to Fabral, and Fabral had remitted those payments to Mountain Metals pursuant to the

acquisition agreement.  By the beginning of 2008, defendants had paid Fabral the entire amount that defendants owed Mountain Metals at the time of the acquisition.  Even if there were still amounts that defendants owe on the old Mountain Metals invoices, defendant Brewster admitted that defendants are liable to Fabral for those invoices.

Plaintiff's Sales to Defendants After
the Mountain Metals Acquisition

From April 2006 until the end of 2007, plaintiff Fabral sold roofing materials to defendants, and defendants made payments to Fabral, but were unable to get current with the Fabral invoices.  Plaintiff sent defendants monthly statements that showed their outstanding and unpaid balance, broken down by "aging" categories, such as "current", "1-30 (days)", "31-60", "61-90", and "91 & over".

Several times during 2006-2008, plaintiff's credit department put defendants on a "credit hold", meaning that Fabral would not ship any more product to defendants until they made progress toward paying outstanding invoices.  In each of those instances, the hold was released after the B&B defendants made some progress toward paying the outstanding amount.

In late July 2007, because B&B was not making enough progress toward paying off the outstanding balance, Fabral's president, Kit Emert, proposed to Cathy Curtosi, Fabral's Credit and Collections Manager, that she provide defendant Brewster with

the following benchmarks: the total accounts receivable balance to be reduced to $1.5 million by September 30, 2007; and the account to be current by the end of 2007.  Ms. Curtosi presented those benchmarks to defendant Brewster, but the B&B defendants did not meet them.

In early fall 2007, it became clear that the combination of the B&B defendants' slow payment, combined with the low margins that Fabral was earning on the B&B account, was creating a problem for plaintiff.  The B&B defendants' outstanding balance had grown to more than $2.6 million, and Mr. Emert began weekly phone calls with defendant Brewster to discuss the oustanding balance and plaintiff's expectations for resolving it.  In those calls, Mr. Emert consistently told Mr. Brewster that plaintiff expected the B&B defendants to work toward paying off the outstanding balance and remaining current as invoices came due.  Defendant Brewster stated that he understood and committed to work toward paying off the balance, starting the oldest invoices (i.e., more than 90 days past due).

In September 2007, Cathy Curtosi went to defendant Brewster's office in Oneida, Tennessee and with the two Fabral salesmen responsible for the B&B account, Jeff Courtney and Don Smith.  Ms. Curtosi, Mr. Courtney and Mr. Smith went to defendant Brewster's office because Mr. Brewster had claimed that he did not owe Fabral for certain invoices.

Ms. Curtosi, Mr. Courtney and Mr. Smith spent an entire night going through all of B&B's records, which ultimately showed that the B&B defendants did indeed owe the amount for which Fabral had invoiced them. After Ms. Curtosi, Mr. Courtney and Mr. Smith presented Mr. Brewster with the paperwork, Mr. Brewster agreed that the B&B defendants owed the amount for which they were invoiced.

On October 16, 2007, Kit Emert sent defendant Brewster a letter setting forth a payment schedule for the outstanding balance which would, if followed, eliminate the B&B defendants' balance and bring their account into current status by December 15, 2007. Although the B&B defendants made the first payment set forth in the letter, $355,000 for the oldest category of invoices, none of the other benchmarks was met. By the end of 2007, defendants' outstanding balance owed to plaintiff was still approximately $1.8 million.

Between January and December 2008, defendants continued to order roofing materials from Fabral, and Fabral supplied the requested materials and sent invoices for such materials to defendants. As of January 29, 2008, defendants owed plaintiff $1,929,041.46.

Early in 2008, Mr. Emert told defendant Brewster that Fabral required that going forward, defendants would have to pay current invoices and an additional $200,000 to $250,000 per month

on the outstanding balance.  Defendant Brewster agreed.  During the months following that conversation, however, defendants failed to meet the agreed-upon schedule.

Plaintiff has demanded in writing that defendant Brewster pay plaintiff for the outstanding amount owed to plaintiff for the materials supplied.  Specifically, during 2008, Ms. Curtosi sent several emails to defendant Brewster notifying him of the amount of defendants' outstanding and unpaid balance owed to plaintiff, and demanding payment.

In the emails that Ms. Curtosi sent to defendant Brewster, Ms. Curtosi broke down the amounts payable into various categories based on the aging of the invoices.  On January 12, 2009, Ms. Curtosi sent defendant Brewster an email in which she stated that the amount that defendants owed to plaintiff was $1,537,959.35.  Defendant Brewster did not dispute that defendants owed that amount.

As of September 10, 2010, B&B's Oneida, Tennessee location had outstanding invoices totaling $210,624.22 for purchases of Fabral product during the period March 5, 2008 through December 11, 2008.  B&B's Knoxville, Tennessee location had outstanding invoices totaling $703,796.32 for purchases of Fabral product during the period January 11, 2008 through December 19, 2008.

Also as of September 10, 2010, B&B's Harriman, Tennessee location had outstanding invoices totaling $125,401.83 for purchases of Fabral product during the period January 3, 2008 through September 18, 2008. B&B's Middlesboro, Kentucky location had outstanding invoices totaling $498,136.98 for purchases of Fabral product during the period April 24, 2008 through December 12, 2008. The total outstanding amount from defendants' four locations as of September 10, 2010 is the same total that existed on January 12, 2009, namely, $1,537,959.35.

For each of the products covered by the invoices that remain unpaid, defendants accepted the products and resold them to their customers. For each of those products, defendants received a benefit when they resold those products to their customers. Defendant Brewster understood that the fact that defendants were able to resell the products that they had purchased from plaintiff was a benefit to defendants.

Fabral's practice was to apply customer payments to particular outstanding invoices pursuant to the customer's instructions. In the absence of customer instructions, plaintiff applied payments to the oldest outstanding invoices first. Ms. Curtosi told defendant Brewster that if he did not specify how he wanted a payment to be made, plaintiff would apply B&B's payments to the oldest invoices first. Defendant Brewster never objected to this practice.

During the latter part of 2007, B&B began sending rounded checks that were not tied to any specific invoices.  Ms. Curtosi told Mr. Brewster that plaintiff would apply the rounded checks to the oldest outstanding invoices.  Mr. Brewster said he understood and did not object to this practice.  On several occasions, Mr. Brewster specifically asked Ms. Curtosi to provide him with the outstanding balance broken down by aging categories, i.e., under 30 days, 31-60 days, 61-90 days, etc.

During the period April 2006 until the end of 2008, defendant Brewster had numerous conversations with Kit Emert and Cathy Curtosi regarding B&B's account with Fabral.  In several of those conversations, defendant Brewster said that he understood that Fabral's terms were net 30 days from the date of invoice, but stated that he believed B&B should be extended the same "grace" in complying with the payment terms that Mountain Metals had extended to B&B.

Mr. Emert and Mr. Curtosi both told Mr. Brewster that regardless of the arrangement that B&B had with Mountain Metals, Fabral expected B&B to pay off the outstanding balance and remain current with invoices going forward.  Mr. Emert and Ms. Curtosi also both told Mr. Brewster that Fabral would work with him to accomplish the goal of eliminating the outsanding balance and getting B&B current on the account.

On several occasions, in response to Ms. Curtosi's question of why B&B was not timely paying Fabral's invoices, Mr. Brewster told her that he was not going to volunteer payment to Fabral and that no one was pushing him to pay. On other occasions, defendant Brewster said to Ms. Curtosi, "give me a reason why I should pay you." Ms. Curtosi told Mr. Brewster that Fabral could not be B&B's "bank", and Mr. Brewster said he understood that.

Despite the fact that B&B had a large unpaid balance and was slow in making payments, Mr. Brewster had very demanding requirements of Fabral in terms of servicing his account, and he did not hesitate to point out issues he had with Fabral's manufacturing or servicing of B&B's account.

Ms. Curtosi repeatedly asked Mr. Brewster to provide Fabral with financial information concerning him and his businesses. Defendant Brewster ultimately provided Fabral with such information many months after Ms. Curtosi requested it.

At no time during the many conversations that Mr. Emert and Ms. Curtosi had with him did Mr. Brewster dispute either the fact that B&B owed Fabral, or the amount that was due. In fact, in one conversation with Mr. Emert, Mr. Brewster said that he was exhausting all possibilities to raise the cash to pay Fabral the balance due.

During the summer of 2008, Mr. Brewster attempted to sell a condominium he owned in Florida to obtain sufficient funds to pay the debt to Fabral, but the sale did not go through. Mr. Brewster often told Mr. Emert about the properties and cars that he owned, which indicated to Mr. Emert that Mr. Brewster had the ability to pay off B&B's outstanding balance.

During several of his conversations with Fabral's representatives, Mr. Brewster stated that he was once sued by a supplier over a balance he owed, and that he would not mind being sued again. Mr. Brewster was referring to a federal lawsuit brought against B&B by a company called Metal Sales Manufacturing Corporation ("Metal Sales").

Defendant Brewster stated variously that he had either "won" the Metal Sales case, or settled the case for "pennies on the dollar". In fact, Metal Sales sued B&B for $400,000 and B&B paid $325,000 in the settlement. Defendant Brewster stated that he believed that Fabral would settle the instant litigation for approximately fifty cents on the dollar, rather than pay the litigation costs.

In several conversations with Mr. Emert, Mr. Brewster stated that Fabral did not need to worry about collecting the balance from him because he was subject to a personal guaranty. In late 2008 and 2009, Mr. Brewster had several conversations with Carol M. Branch, who assumed the position of Director of

Credit and Collections for Euramax International, the parent company of Fabral, in October 2008.  In his conversations with Ms. Branch, defendant Brewster did not deny that he owed Fabral the full balance that was due, and in fact acknowledged that he owed Fabral for that balance.

## CONTENTIONS OF THE PARTIES

### Contentions of Plaintiff

Plaintiff contends there are no genuine issues of material fact in this case, and therefore plaintiff is entitled to summary judgment on its claims and defendants' counterclaims. First, regarding Count I, plaintiff contends that the Credit Application and Agreement is a binding contract between plaintiff and the B&B defendants whereby the B&B defendants were required to pay invoices within 30 days.  Plaintiff avers that the B&B defendants breached the contract by accepting roofing materials delivered and invoiced by plaintiff in 2008, and failing to pay for the materials at the contract price.

Plaintiff contends that the B&B defendants have adduced no evidence that the unpaid invoices are for materials delivered by Mountain Metals, and avers that it is undisputed that the materials were, in fact, delivered by Fabral.  Therefore, plaintiff contends that, regardless of any oral agreement between the parties regarding how Mountain Metals invoices would be paid,

all of the invoices at issue here are due and owing to Fabral, not Mountain Metals.

Moreover, plaintiff contends that to whatever extent it may be relevant, defendants cannot show that the "Mountain Metals Balance Agreement" even exists or would excuse any liability to pay the outstanding balances. In support of this averment, plaintiff relies on the deposition of defendant Brewster for the proposition that any balance on the Mountain Metals account was owed to Fabral.

Regarding Count II, plaintiff contends it is entitled to summary judgment on its breach of contract claim against defendant Brewster because, by the Personal Guaranty, he unconditionally guaranteed payment to plaintiff for all amounts owed by the B&B defendants for any materials furnished by Fabral. Plaintiff avers that the Personal Guaranty is a binding contract between plaintiff and defendant Brewster, and that he breached the contract by failing to pay the outstanding invoices. Moreover, plaintiff contends that defendant Brewster testified at his deposition that the Personal Guaranty applies to any payments owed to Fabral, including any amounts previously owed to Mountain Metals.

Alternatively, regarding Count III, plaintiff contends that even if I were to determine that no contract exists for purposes of Counts I or II, plaintiff would be entitled to

summary judgment on its unjust enrichment claim.  Specifically,

plaintiff asserts it is undisputed that plaintiff conferred

benefits on defendants by delivering roofing materials to them;

that defendant appreciated those benefits; and that defendants

accepted and retained the benefits (by reselling the materials to

their own customers) under such circumstances that it would be

inequitable for defendants to retain those benefits without

payment of value.[7]

### Contentions of Defendants

Defendants contend that plaintiff's motion for summary

judgment should be denied for two reasons.  First, they contend

that the motion should be denied to the extent it seeks summary

judgment against defendant B&B Roofing Company, Inc. ("B&B

Roofing") because plaintiff has adduced no evidence that B&B

Roofing ever purchased materials from plaintiff.

Second, defendants aver that there is a genuine issue

of material fact regarding how monies paid by defendants to

plaintiff were applied to defendants' balance.  Specifically,

defendants contend that there is a fact question of whether the

parties reached an oral agreement (the so-called "Mountain Metals

Balance Agreement") for the purpose of continuing payment on an

---

[7]     Plaintiff's motion also contends that plaintiff is entitled to
summary judgment in its favor on each of defendants' counterclaims.  However,
as noted above, on February 23, 2011, defendants withdrew their counterclaims.
Accordingly, I dismiss the motion as moot in that regard, and I do not address
the merits of either parties' contentions on the counterclaims.

outstanding Mountain Metals balance.  Defendants contend that this issue precludes entry of summary judgment.

DISCUSSION

Choice of Law

Plaintiff avers that the matter before this court on diversity jurisdiction is governed by Pennsylvania substantive law.  Specifically, plaintiff contends that Count I is governed by the Uniform Commercial Code ("UCC"), as adopted in Pennsylvania, because the claim arises from the Credit Application and Agreement, which provides for the application of such law.[8]

Regarding Count II, which arises from the Personal Guaranty, plaintiff avers that the Personal Guaranty does not contain a choice-of-law provision.  However, plaintiff contends that either the law of Pennsylvania or the law of Tennessee would apply, but that no choice-of-law analysis is necessary because there is no conflict between Pennsylvania and Tennessee substantive law on breach of contract.  Specifically, plaintiff avers that both Pennsylvania and Tennessee have adopted the relevant provision of the UCC,[9] and therefore Pennsylvania law applies.

---

[8]    Complaint, Exhibit A.

[9]    13 Pa.C.S.A. § 2607(a);  Tenn.Code.Ann. § 47-2-607(1), both of which provide that "The buyer must pay at the contract rate for any goods accepted".

-23-

Plaintiff also avers that, for purposes of Count III, Pennsylvania and Tennessee law are also identical on unjust enrichment.[10] Defendants do not dispute plaintiff's characterization of the applicable law on any of the three counts, and therefore I apply the law as articulated by plaintiff.

## Count I

Count I alleges that the B&B defendants breached the Credit Application and Agreement by accepting goods and failing to pay for them. As noted above, under the UCC as adopted in Pennsylvania, "[t]he buyer must pay at the contract rate for any goods accepted". 13 Pa.C.S.A. § 2607(a). Plaintiff contends that the undisputed facts in this case are that the B&B defendants accepted roofing materials from plaintiff Fabral, and failed to pay for them at the contract price.

To state a claim for breach of contract in Pennsylvania, plaintiff must show (1) the existence of a contract, including its essential terms; (2) a breach of the duty imposed by the contract; and (3) resultant damages. Ware v. Rodale Press, Inc., 322 F.3d 218, 225-226 (3d Cir. 2003)(quoting

---

[10]    See Freeman Industries, LLC v. Eastman Chemical Company, 172 S.W.3d 512, 525 (Tenn. 2005); Northeast Fence & Iron Works, Inc. v. Murphy Quigley Company, Inc., 933 A.2d 664, 669 (Pa.Super. 2007), each of which provide that the elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefits under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.

CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999).

It is plaintiff's burden to prove the existence of a contract by a preponderance of the evidence. Viso v. Werner, 471 Pa. 42, 46, 369 A.2d 1185, 1187 (1977). Here, plaintiff contends, and defendant does not dispute, that the Credit Application and Agreement ("Agreement"), which is attached to the Complaint as Exhibit A, is a binding contract between plaintiff Fabral and the B&B defendants.

The Agreement was signed November 4, 2003 by defendant Brewster on behalf of applicant "B&B Roofing & Metals, Inc.". It is undisputed that each of the B&B defendants does business under the trade name B&B Roofing and Metals, Inc.[11]

The Payment Terms as set forth in the Agreement provide that "All sales are cash prior to production except when credit has been approved by the credit manager. Upon approval of credit, terms are net cash thirty [(]30[)] days from date of invoice, unless otherwise specified." (Agreement, page 2.)

The undisputed facts are that, as of September 10, 2010, the B&B defendants collectively owed plaintiff a total of $1,537,959.35 for goods received from Fabral in 2008. Specifically, B&B Metals' Oneida, Tennessee location had outstanding invoices totaling $210,624.22 for purchases of Fabral

---

[11]    Complaint, paragraphs 2-4; Answer, paragraphs 2-4.

-25-

product during the period March 5, 2008 through December 11, 2008. B&B Metals' Knoxville, Tennessee location had outstanding invoices totaling $703,796.32 for purchases of Fabral product during the period January 11, 2008 through December 19, 2008. B&B Metals' Harriman, Tennessee location had outstanding invoices totaling $125,401.83 for purchases of Fabral product during the period January 3, 2008 through September 18, 2008. These outstanding balances total $1,039,822.37 for defendant B&B Metals.

Additionally, it is undisputed that as of September 10, 2010, B&B Metals of Middlesboro had outstanding invoices totaling $498,136.98 for purchases of Fabral product during the period April 24, 2008 through December 12, 2008.

Defendant has adduced no evidence which creates a genuine issue of material fact regarding whether B&B Metals has an outstanding balance of $1,039,822.37 for purchases of Fabral products in 2008, which exceeds the 30-day payment term as set forth in the Agreement. Moreover, defendant has adduced no evidence which creates a genuine issue of material fact regarding whether B&B Metals of Middlesboro had outstanding invoices totaling $498,136.98 for purchases of Fabral product in 2008, which also exceeds the 30-day payment term as set forth in the Agreement.

Because there is no genuine issue of material fact that defendant B&B Metals and defendant B&B Metals of Middlesboro had outstanding balances which exceed the payment terms set forth in the Agreement, plaintiff has established a breach of the Agreement in that regard.  Accordingly, I grant summary judgment in favor of plaintiff and against defendants B&B Metals in the amount of $1,039,822.37 in compensatory damages, and against B&B Metals of Middlesboro in the amount of $498,136.98 in compensatory damages, on Count I.  However, I reserve for trial for for future hearing the issue of collection costs, attorneys' fees, and interest, to the extent such may be recoverable under the Agreement or by statute.[12]

Moreover, I note that defendant does not dispute plaintiff's entitlement to summary judgment against B&B Metals and B&B Metals of Middlesboro.  Rather, regarding Count I, defendant argues only that defendant B&B Roofing never purchased materials from Fabral, and therefore plaintiff is not entitled to summary judgment against B&B Roofing because no money was owed by B&B Roofing.

---

[12]    The Agreement provides that "If Buyer fails to pay any invoice in full when due, Buyer shall pay Seller's collection costs.  In the event of the lawsuit between Buyer and Seller, Buyer shall pay Seller's court costs and attorneys' fees." (Agreement, page 3.)  Although the Complaint demands relief in the nature of compensatory damages (which are addressed herein), prejudgment interest, and attorneys' fees and costs of suit on Count I, such relief is not addressed by plaintiff's motion for summary judgment. Accordingly, I reserve those issues for trial or future hearing.

In its reply brief, plaintiff argues that for purposes of the Agreement, there is no distinction between B&B Roofing and B&B Metals. Plaintiff also avers that B&B Roofing is "so closely related" to B&B Metals that B&B Roofing "had an obligation to ensure that payment under [the Agreement] was made – whether or not it purchased any roofing materials from Fabral". (Plaintiff's reply, pages 3-4.) Plaintiff cites no authority for this proposition.

Plaintiff also argues that B&B Metals and B&B Roofing have joint liability under the Agreement. In support of this contention, plaintiff cites <u>Pittsley v. Young</u>, 206 Pa. 193, 196, 55 A. 920, 921 (1903), for the proposition that "when two or more persons undertake an obligation, that they undertake jointly"; and <u>Meinhart v. Heaster</u>, 424 Pa.Super. 433, 437, 622 A.2d 1380, 1382 (1993), for the proposition that "promises made by two or more persons are presumed to be joint and not several or joint and several in the absence of an apparent intention to the contrary".

However, although each of the B&B defendants does business as "B&B Roofing & Metals, Inc.", which is the "applicant" named in the Agreement, plaintiff has not established that the Agreement constitutes a joint obligation by which each of the B&B defendants is responsible for the others' outstanding

respective balances.  Therefore, I deny the motion to the extent it seeks summary judgment against B&B Roofing on Count I.

Count II

Count II alleges breach of contract against defendant Brewster for breach of the Personal Guaranty ("Guaranty"), which is attached to the Complaint as Exhibit B.  The Guaranty provides that defendant Brewster, as "Guarantor/Guarantors", "unconditionally guarantees the payment to Fabral of all sums and amounts which the Customer shall at any time owe to Fabral for any materials furnished to Customer by Fabral." (Guaranty, page 1.)  It further names, as "customer", "Gary Brewster, B&B Roofing & Metals, Oneida, TN; Knoxville, TN; Harriman, TN; and Middlesboro, KY locations".

The Guaranty further provides that, as guarantor, defendant Brewster "will pay all amounts guaranteed to Fabral upon written demand for payment from Fabral sent to Guarantors together with interest after such demand on any unpaid amounts at the rate of twelve percent (12%) per annum or the maximum rate permitted by law, whichever is less, from the date of demand and until paid in full". (Guaranty, page 1, paragraph A.)

Here, it is undisputed that plaintiff has demanded, in writing, that defendant Brewster pay plaintiff for the outstanding amount owed to plaintiff for the materials supplied. Specifically, on January 12, 2009, Ms. Curtosi sent defendant

Brewster an email in which she stated that the amount that defendants owed to Fabral was $1,537,959.35, which represents the total amounts undisputedly owed by B&B Metals and B&B Metals of Middlesboro for purchases of Fabral products in 2008, as set forth above.  It is also undisputed that defendant Brewster did not contest that amount.

Thus, regarding Count II, plaintiff has shown evidence of the existence of a contract, including its essential terms, that is, the Guaranty; a breach of the duty imposed by the contract, that is, defendant Brewster has not paid the amounts owed by B&B Metals and B&B Metals of Middlesboro after receiving a written demand; and resultant damages.  Ware, 322 F.3d at 225-226.

Defendants have adduced no evidence giving rise to a genuine issue of material fact on any of the elements of breach of the Guaranty.  Accordingly, I grant summary judgment in favor of plaintiff and against defendant Brewster on Count II in the amount of $1,537,959.35 plus interest at the rate of twelve percent per annum or the maximum rate permitted by law, whichever is less, from January 12, 2009 (the date of demand) until paid in full, pursuant to the terms of the Guaranty.

### Count III

Count III sets forth an alternative claim for unjust enrichment against all defendants.  As noted above, the elements

of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefits under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. Northeast Fence, 933 A.2d at 669. Unjust enrichment is inapplicable where a written or express contract exists. Id.

Because I conclude that Counts I and II are based on written contracts, and because I have granted summary judgment in favor of plaintiff on each of Counts I and II, plaintiff is not entitled to relief under a theory of unjust enrichment. Northeast Fence, 933 A.2d at 669. Accordingly, I dismiss Count III as moot.

## Counterclaims

Because defendant has withdrawn its entire counterclaim, I dismiss plaintiff's motion for summary judgment on the counterclaim as moot, and I do not address the merits of the counterclaim.

## CONCLUSION

For all the foregoing reasons, I grant Plaintiff's Motion for Summary Judgment in part and deny it in part. On Count I, I enter judgment in favor of plaintiff Fabral, Inc. and against defendant B&B Metals, LLC on liability and compensatory damages only in the amount of $1,039,822.37; and I enter judgment

in favor of plaintiff Fabral, Inc. and against defendant B&B
Metals of Middlesboro, Inc. on liability and compensatory damages
only in the amount of $498,136.98.

I deny the motion to the extent it seeks summary
judgment on Count I in favor of plaintiff and against defendant
B&B Roofing Company, Inc.

On Count II, I grant summary judgment in favor of
plaintiff and enter judgment in favor of plaintiff Fabral, Inc.
and against defendant Gary M. Brewster, in the amount of
$1,537,959.35 plus interest at the rate of twelve percent per
annum or the maximum rate permitted by law, whichever is less,
from January 12, 2009 (the date of demand) until paid in full.

I dismiss Count III as moot.

Finally, I dismiss the motion as moot to the extent it
seeks summary judgment in plaintiff's favor on defendants'
counterclaim.